UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY SCOTT-EVERETT,<br><br>Plaintiff,<br><br>v.<br><br>PHH MORTGAGE LLC ET AL.,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*  Civil Action No. 22-cv-12121<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Mary-Scott Everett ("Scott-Everett"), proceeding pro se, alleges that Defendants PHH Mortgage LLC ("PHH"), Mortgage Assets Management LLC ("MAM"), Ocwen Financial Corp. ("Ocwen"), Champion Mortgage ("Champion"), and Nationstar Mortgage ("Nationstar")[1] improperly withheld insurance proceeds after a house fire. See [ECF No. 18 at 6 ¶ 6 ("SAC")].[2] Now pending before the Court are Nationstar and Champion's motion for judgment on the pleadings, [ECF No. 39]; PHH, MAM, and Ocwen's motion for judgment on the pleadings, [ECF No. 45]; and Scott-Everett's motion to reconsider the denial of her request to add her son Dale Desmond as an interested party, [ECF No. 57]. For the reasons set forth below, the motions for judgment on the pleadings, [ECF Nos. 39, 45], are GRANTED, and Scott-Everett's motion to reconsider, [ECF No. 57], is DENIED as moot.

---

[1] Originally named Defendants WMIH, Deutsch Bank, Liberty Reverse Mortgage, and Reverse Mortgage Solutions Inc. are no longer part of the case. See [ECF Nos. 35, 37].

[2] The paragraph numbers on each page of the SAC restart at 1. Accordingly, when citing to the SAC, the Court cites to the page number first, and then the relevant paragraph number on that page.

I.     **STANDARD OF REVIEW**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts considering motions for judgment on the pleadings use a standard similar to the one used for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), "with the court viewing the facts contained in the pleadings in the light most favorable to the nonmovant and draw[ing] all reasonable inferences therefrom." Malanowski v. Wells Fargo Bank N.A, 654 F. Supp. 3d 25, 29 (D. Mass. 2023) (quoting In re Loestrin 24 Fe Antitrust Litig., 814 F.3d 538, 549 (1st Cir. 2016) (alterations in original) (additional quotations and citations omitted)). A Rule 12(c) motion, however, "unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54–55 (1st Cir. 2006). "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (quoting Aponte-Torres, 445 F.3d at 54).

In addition, "[a] document filed by a pro se party 'is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Strahan v. AT&T Mobility LLC, 270 F. Supp. 3d 535, 540 (D. Mass. 2017) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotation marks omitted))). That said, "while pro se complaints 'are accorded "an extra degree of solicitude[,]" . . . even a pro se plaintiff is required to "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."'" Id. (quoting Wright v. Town of Southbridge, No. 07-cv-40305, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009)

(quoting Adams v. Stephenson, No. 96-2266, 1997 WL 351633, at *1, 116 F.3d 464 (Table) (1st Cir. June 23, 1997))).

## II.  BACKGROUND

### A.  Background Facts

Scott-Everett's claims are challenging to discern and follow, but interpreting the SAC liberally, see Strahan, 270 F. Supp. at 540, the Court provides the following summary of relevant facts, construed in the light most favorable to Scott-Everett, see Malanowski, 654 F. Supp. 3d at 29.

#### 1.  The Mortgage

In 2008, Scott-Everett entered a Reverse Mortgage Contract (the "Mortgage") with the Bank of America Reverse Mortgage Division ("BOAMD").  [SAC at 6 ¶ 2].[3]  Among other things, the Mortgage provides that, with respect to insurance,

> [e]ach insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened.

---

[3] Although "[o]rdinarily, . . . any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden[] unless the proceeding is properly converted into one for summary judgement," courts "have made narrow exceptions for documents the authenticity of which are not disputed by the parties; . . . for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Here, there is no mortgage attached to the SAC, but all of the parties attach either or both an Adjustable Rate Home Equity Conversion Mortgage, [ECF No 40-2; ECF No. 46-1; ECF No. 53-1 at 2–10, 21, 34], and an Adjustable Rate Home Equity Conversion Second Mortgage, [ECF No. 46-2 at 16–26; ECF No. 53-1 at 11–20].  These documents are not disputed as inauthentic, are central to the claims, and are sufficiently referred to in the SAC, and thus the Court will consider them.  See Watterson, 987 F.2d at 3.  In addition, although they are two separate documents, the relevant provisions are the same, and thus the Court refers to them collectively as the Mortgage.

3

[ECF No. 53-1 at 3]; see also [id. at 12].  In addition, the Mortgage states that it "shall be governed by Federal law and the law of the jurisdiction in which the Property is located."  [Id. at 8]; see also [id. at 17].  Here, the property is identified as being in Massachusetts.  [Id. at 2]; see also [id. at 11, 21].

Approximately four years after the inception of the Mortgage, in 2012, Champion acquired BOAMD, and presumably the rights to the Mortgage.  [SAC at 6 ¶ 4].[4]  Although Scott-Everett alleges that thereafter PHH "acquired Champion," [id. at 11 ¶ 4], a letter from PHH to the Massachusetts Attorney General, which was attached to the SAC, clarifies the history of the Mortgage as follows:  "On March 1, 2022, PHH Mortgage Services (PHH) began servicing the account.  On March 4, 2022, the interest on the reverse mortgage was assigned to Mortgage Assets Management LLC (MAM).  Therefore, PHH is servicing the account on behalf of MAM."  [ECF No. 18-1 at 10].

        2.      The House Fire and Its Aftermath

On August 31, 2017, a house fire damaged the home that was apparently covered by the Mortgage.  [SAC at 6 ¶ 5].  Scott-Everett "immediately informed [Champion] of the catastrophic state of the house and property," and Champion "responded to [Scott-Everett] by delivering to [her]" a "Draft Loss Claim Packet" (the "Loss Packet").  [Id. at 8 ¶ 4].  At least part of the Loss Packet is attached to the SAC, see [ECF No. 18-1 at 13–16], and a more complete version is

---

[4] Scott-Everett states that when this happened, Champion "unilaterally altered the [Mortgage] by not allowing [her] the initial notifying right to option out of contract when Champion . . . transacted the [Mortgage] during the year 2012."  [SAC at 13 ¶ 2].

4

attached to Nationstar and Champion's motion, [ECF No. 40-4].[5]  The Loss Packet provides the following:

> We have been advised that there has been property damage to the above referenced property.  As Champion Mortgage has a security interest in your property, it is our policy to monitor the completion of repairs on all losses.  If funds exceed the outstanding account balance or the damage has been determined to be a total loss, Champion Mortgage may use the funds to pay the account in full or apply to the outstanding balance.  In addition, if your loan is not in good standing, the disbursement funds will be released payable to you and the contractor. . . .
>
> **PROCESS GUIDELINES – WHAT TO SUBMIT**
>
> Please be advised that you will need to provide us with the fo1lowing completed documents.  Details and sequence for submission for each document are as follows
>
> . . .
>
> **Contractor's License Affidavit** (if applicable) - Depending on the situation, we may require you to hire a licensed contractor to complete the repairs.  This form will need to be completed in its entirety by the contractor(s) in the presences of a notary.  This document may be required prior to the disbursement of any funds. . . .
>
> **What do I need to provide if my account is in good standing and my net claim exceeds $40,000.00?** . . . *A <u>licensed</u> contractor will be required to complete your repairs and all disbursements will include the contractor as a payee.* . . .

[ECF No. 18-1 at 13, 15–16; ECF No. 40-4 at 2, 4–6].

Scott-Everett alleges that after that fire, Champion breached the conditions of the Mortgage and Massachusetts 780 C.M.R. § 110.R5.1.2 by refusing to issue an insurance check payable only to Scott-Everett to allow her to raze and replace the house.  See, e.g., [SAC at 6 ¶¶ 3, 6].  Rather, Champion required that Scott-Everett hire a "licensed contractor," and would only issue an insurance check to both Scott-Everett and a licensed contractor, see, e.g., [id. at 7 ¶¶ 1, 3].

---

[5] Although the full Loss Packet is not attached to the SAC, the version at ECF No. 40-4 is not disputed as inauthentic, is central to the claims, and is sufficiently referred to in the SAC, and thus the Court will consider it.  See Watterson, 987 F.2d at 3.

Scott-Everett alleges that she communicated to Champion representatives several times, via written correspondence and phone calls, that the requirements in the Loss Packet were contrary to the Mortgage, including the policy to issue an insurance check to both Scott-Everett and a licensed contractor. [SAC at 8 ¶¶ 5–6]. Specifically, she explained that she had a lawful right under 780 C.M.R. § 110.R5.1.2 to exercise an exemption to any licensed contractor requirements. See [id. at 9 ¶ 1].[6] In addition, she alleges that the law does not require her to hire a licensed contractor to repair the house, regardless of the amount of the check issued by the insurance company. See [id. at 9 ¶ 4].

Notwithstanding Scott-Everett's complaints, she has received insurance checks as a result of the fire. See [SAC at 7 ¶ 4, 8 ¶ 2]. In 2018, Champion issued an initial payment to both Dale Desmond Designs and Promotions and Mary-Scott Everett. [Id. at 7 ¶ 4]. Scott-Everett alleges that despite the licensed contractor requirement, Dale Desmond Designs and Promotions "was not a licensed contractor." [Id.]. She further avers that the issuance of this initial check was "inequitable conduct." [Id. at 7 ¶ 5]. For example, she states that along with this first check, she was required to "write a follow-up letter to [Champion] . . . admitting wrongdoing," furthering the inequitable conduct. [Id. at 7 ¶ 6, 8 ¶ 1]. Moreover, Scott-Everett states that the first check "was required to be for the amount payable of 1/3 of the insurance proceeds," but "was less than

---

[6] Scott-Everett attaches to the SAC a "Homeowners Exemption Eligibility Affidavit," in which she asks the town of Hopkinton, Massachusetts for an "exemption to the permit requirements of the Massachusetts State Building Code, codified at 780 CMR 110.R5.1.3.1, in connection with a project or work on a parcel of land to which I hold legal title." [ECF No. 18-1 at 2]. It is unclear from the record whether this exemption request was approved.

required." [Id. at 8 ¶ 2]. Finally, "subsequent checks" were issued, but they "were forced to be written payable to [both] EAW Roofing and Construction, Inc. and Mary Scott-Everett."[7] [Id.].[8]

As a result of these events, Scott-Everett sent Champion a "demand letter" explaining that they were not adhering to the Mortgage and relevant law. [SAC at 10 ¶ 2]. The response to this letter, she alleges, "was intentionally obfuscating and misinterpreted 780 C.M.R. § 110R.5.1.2." [Id. at 10 ¶ 4]. What appears to be a response to the demand letter is attached to the SAC, [ECF No. 18-1 at 3–4], and states the following:

> Your concern in regards to Bank of America's loan documents not stating a licensed contractor is required to complete repairs on the home was forwarded to our Legal Counsel for review. Please be advised it has been determined the state of Massachusetts requires anyone supervising or performing construction work to be licensed; therefore, the state requirement would trump the Bank of America documents. . . .
>
> Our records show you have completed the demolition and some landscaping on the property. Our Loss Draft Department had an inspection completed on June 13, 2018 to confirm that work was completed. The inspection results came back at 100% for those items and the check for $14,835.58 was issued on June 22, 2018.
>
> Please be advised because previous work on the property began without the approval from Champion, a licensed contractor is required in order to release additional disbursements. Mary R. Scott[-Everett] (Mary) will need to send in the new contractor documents for the licensed contractor, updated bid for the remainder of the work on the property, as well as a letter advising she acted outside of guidelines and will follow our process going forward.
>
> Due to the loss amount, our procedures require a licensed contractor for this claim. We are providing a copy of the claim packet which was sent to Mary on October 12, 2017, providing our process guidelines as well as the required documents.

[Id. at 3].

---

[7] As explained below, as of the date of the SAC, it appears that Scott-Everett had been issued $147,534.60, and that $22,511.53 is the amount currently in dispute. See [ECF No. 18-1 at 11].

[8] Plainitff also alleges that "the result of [Champion's] actions," without specifying which specific actions, "are that [Champion] committed a failure to disclose (omitted) information (TILA), as it relates to the [Mortgage]." [SAC at 8 ¶ 3].

7

Scott-Everett also attaches to the SAC a letter from PHH to the Consumer Advocacy and Response Division of the Massachusetts Office of the Attorney General, [ECF No. 18-1 at 10–12], which appears to have been written in response to a debt validation dispute that she filed with the Attorney General's Office, see [SAC at 12 ¶¶ 1–5]. That letter states, among other things, the following:

> We[, PHH,] reviewed the "Process Guidelines" and determined that these guidelines pertain to the step-by-step procedure regarding the processing and disbursing of insurance funds, the Loss Draft Process, for the damage at the property in compliance with the State of Massachusetts' requirements, investor/lender requirements and HUD requirements.
>
> We understand that the "Process Guidelines" were not mentioned in the reverse mortgage contract. It is because these guidelines are not terms of a reverse mortgage, thus, these are not required to be stipulated in the contract. These guidelines were established by the servicer to assist the borrowers in the Loss Draft Process and to ensure the repairs and insurance funds disbursements follow the state-specific requirements, investors/lender requirements, and HUD requirements.
> . . .
>
> [W]e respectfully disagree with the statement that the exclusion of the "Process Guidelines" from the reverse mortgage contract have breached the contract. We also disagree that the terms of the reverse mortgage were changed, and the terms were changed without Ms. Scott-Everett's consent. As mentioned, the "Process Guidelines" are not terms of a reverse mortgage. Rather, the "Process Guidelines" assist the borrower with the Loss Draft Process that follow the state-specific requirements, investor/lender requirements and HUD requirements to protect and preserve the property. . . .
>
> As of the date of this letter, the prior servicer had already disbursed an amount of $147,534.60 to Ms. Scott-Everett. The remaining insurance funds for disbursement, pending final inspection at 100% completion of repairs, is in the amount of $22,511.53. Per our Loss Draft Department, PHH is waiting for Mr. Desmond's preferred schedule for our vendor to conduct the final inspection of the property. Therefore, to expedite the processing of final insurance funds disbursement, we highly encourage Mr. Desmond (i) to ensure repairs are 100% complete, and (ii) to call our Loss Draft Department to schedule the inspection of the property. Our Loss Draft Representatives are available Monday through Friday between the hours of 7:00 AM to 7:00 PM, Central Standard Time.
>
> Lastly, the insurance check will be issued to Ms. Scott-Everett and to the contractor.

[ECF No. 18-1 at 11].

Ultimately, as a result of the alleged breach of contract, Scott-Everett seeks disbursement of "fund[s] retained of $22,511," as well as "relief in the amount of $3,363,000 plus punitive damages." [SAC at 13 ¶¶ 4–5].[9]

### B. Procedural History

As relevant here, Plaintiff filed the operative SAC on March 23, 2023. [SAC]. MAM, Ocwen, and PHH answered on April 6, 2023, [ECF No. 19], and Nationstar and Champion answered on May 17, 2023, [ECF No. 32]. Nationstar and Champion moved for judgment on the pleadings on June 23, 2023, [ECF No. 39], and PHH, MAM, and Ocwen moved for judgment on the pleadings on July 27, 2023, [ECF No. 45]. Scott-Everett filed a first opposition to both motions on October 2, 2023, [ECF No. 51], and a second opposition to both motions on October 16, 2023, [ECF No. 53].

## III. DISCUSSION

In light of the above summary of facts, the Court discerns from the SAC that Scott-Everett alleges that Defendants breached the Mortgage by refusing to issue the remaining $22,511 balance of the insurance payment to Scott-Everett alone, instead requiring that the check issue to Scott-Everett and a licensed contractor. See supra.[10] Nationstar and Champion argue,

---

[9] Scott-Everett includes several other allegations that the Court does not address above because they do not appear to be tied to and/or do not create or impact any discernable claims against Defendants, including that (1) plaintiff has brought separate claims against the insurance company, Liberty Mutual Insurance Company, [SAC at 9 ¶ 3, 11 ¶ 2]; (2) Champion and PHH are attempting wrongful foreclosure and forcing Scott-Everett to make "financial mismanagement decisions," [id. at 9 ¶ 3, 10 ¶¶ 5–6, 11 ¶¶ 2–5, 12 ¶ 3]; and (3) Scott-Everett has filed complaints with several federal and state agencies, [id. at 10 ¶ 6, 11 ¶¶ 1–2, 5, 12 ¶¶ 1–2].

[10] To the extent that Scott-Everett believes that the Complaint raises additional claims, see, e.g., [ECF No. 51 at 6 ("The original complaint did in fact contain a list of claims, including aider and abettor liability, anticipatory breach of reverse mortgage contract[,] breach of fiduciary duty, collect debt not owed, control persons liability, fraud and willful misrepresentation, a breach of

among other things, that the SAC (1) does not comply with Federal Rule of Civil Procedure 8(a) because it does not give fair notice of the claims, [ECF No. 40 at 9–11]; (2) fails to state a claim because even if hiring a licensed contractor to conduct repairs is not an express term of the Mortgage, it is required under Massachusetts law, which governs the Mortgage, [id. at 2, 12–13]; and (3) in any event, the SAC fails to state a claim for breach of contract, [id. at 11–12]. PHH, MAM, and Ocwen separately argue that they "were not involved in th[e] process, nor did they have any relationship to the Plaintiff's loan at the relevant time," [ECF No. 46 at 1], and that even if they were involved, the requirement for a licensed contractor is proper under Massachusetts law, [id. at 2]. In response, Scott-Everett appears to maintain her argument that the requirement that an insurance check issue to both her and a licensed contractor was a breach of the Mortgage, see [ECF No. 51 at 2–4; ECF No. 53 at 2–4, 6], and that a license is not required for construction work in Massachusetts, [ECF No. 51 at 5].

      First, the Court finds that Defendants did not breach the Mortgage. "[T]o state a viable breach of contract claim under Massachusetts law, plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach." Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007). Although the general rule is that plaintiffs must point to specific contractual obligations that were allegedly breached, see Doyle v. Hasbro, Inc., 103 F.3d 186,

---

the implied covenant of good faith and fair dealing, inappropriate[] collateral sales, and generally, a wide range of inequitable conduct by Champion Mortgage, PHH Mortgage, and affiliates.")], the Court cannot discern them from the SAC and they are not supported by her oppositions to the motions, see generally [ECF Nos. 51, 53]. The Court's "duty to be 'less stringent' with pro se complaints does not require [it] to conjure up unpled allegations," McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (quoting Hurney v. Carver, 602 F.2d 993 (1st Cir. 1979)), and here, any additional purported claims are insufficiently pled for the Court to determine what they are.

195 (1st Cir. 1996), the First Circuit has encouraged courts to allow breach of contract claims to survive motions to dismiss if the factual allegations support a potential claim, notwithstanding an untidy or imperfect pleading, Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 233 (1st Cir. 2013) ("Although [the breach of contract claim] is pled in a muddled fashion, [it] incorporates [the] factual allegations by reference and states that defendants breached their duty to abide by the contract's terms.").

Here, even viewing the SAC in the light most favorable to Scott-Everett, the Court cannot discern a contractual obligation that any of the Defendants breached by insisting that an insurance check be payable to both Scott-Everett and a licensed contractor. See [ECF No. 53-1 at 3, 12 (insurance payment provision in the Mortgage)].

Second, the Court agrees with Nationstar and Champion that Massachusetts law governs the Mortgage. [ECF No. 53-1 at 8, 11, 17, 21]. With that in mind, even if Scott-Everett had been granted her requested homeowner's exemption to supervise work on her home under 780 C.M.R. § 110.R.5, see [SAC at 9 ¶ 1; ECF No. 18-1 at 2], which is not clear, that does not mean that the individual(s) she hired to work on her home could do so without a license themselves. See, e.g., Mass. Gen. Laws. ch. 142A, § 9 ("No contractor or subcontractor shall undertake, offer to undertake, or agree to perform residential contracting services unless registered therefor with the approval of the office of consumer affairs and business regulation."); see also id. ch. 141, § 1A ("No person, firm or corporation shall enter into, engage in, or work at the business or occupation of installing wires, conduits, apparatus, devices, fixtures, or other appliances for carrying or using electricity for light, heat, power, fire warning or security system purposes, unless such person, firm or corporation shall be licensed by the state examiners of electricians in accordance with this chapter and, with respect to security systems, unless such person, firm or

11

corporation shall also be licensed by the commissioner of the division of occupational licensure . . . "); id. ch. 142, § 3 ("No person shall engage in the business as a master plumber or a master gas fitter or work as a journeyman plumber or as a journeyman gas fitter or as an apprentice plumber or as an apprentice gas fitter or as an undiluted liquefied petroleum gas installer or as a limited undiluted liquefied petroleum gas installer, nor solicit, by sign, listing or any other form of advertisement, work regulated or controlled by this chapter or by any ordinance, by-law, rule or regulation made hereunder, unless he is lawfully registered, or has been licensed by the examiners as provided in this chapter.").[11]  Thus, the Court finds that Scott-Everett has failed to state a claim, and the SAC must be dismissed.

### IV. CONCLUSION

Accordingly, the motions for judgment on the pleadings, [ECF Nos. 39, 45], are GRANTED, and the SAC is dismissed with prejudice with respect to any claim for breach of the Mortgage relating to Defendants requiring that the insurance payments be issued to both Scott-Everett and a licensed contractor.  In addition, Scott-Everett's motion to reconsider, [ECF No. 57], is DENIED as moot.  The Court sympathizes with Ms. Scott-Everett, but notes that it appears that Defendants are ready to relinquish the remaining $22,511 as soon Scott-Everett allows an inspection of her property, and the Court encourages her to do so.  See [ECF No. 18-1 at 11].

**SO ORDERED.**

March 4, 2024                                                                          /s/ Allison D. Burroughs

---

[11] To the extent that the work on Scott-Everett's home falls outside of the type of work that requires a license under the Massachusetts law cited above—namely contracting, electric, or plumbing work—she has not argued and the pleadings do not support that it does.  In any event, it appears that the work is now complete, and that the remaining issue is whether Scott-Everett will allow an inspection of the property before Defendants relinquish the remaining $22,511. See [ECF No. 18-1 at 11].

ALLISON D. BURROUGHS  
U.S. DISTRICT JUDGE